JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 21-01538 PA (JCx) | Date | March 24, 2021 |
|---|---|---|---|
| Title | Rudi Vanegas v. DHL Express (USA), Inc. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE |
|---|---|

| K. Sali-Suleyman | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**   IN CHAMBERS – COURT ORDER

Before the Court is plaintiffs Rudi Vanegas and Jesus Orozco's ("Plaintiffs") Motion to Remand. (Dkt. No. 11) ("Remand").) Defendant DHL Express (USA), Inc. ("Defendant") has filed an Opposition, and Plaintiffs filed a Reply. (Dkt. Nos. 12 ("Opp.") and 13 ("Reply").) Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument. The hearing calendared for April 5, 2021 is vacated, and the matter taken off calendar.

### I.  Background

On April 24, 2020, Plaintiffs filed a wage and hour class action Complaint against Defendant. (Dkt. No. 1, Ex. C ("Compl.").) Plaintiffs asserted five claims against Defendant on behalf of themselves and other putative class members for: (1) failure to authorize and/or permit meal breaks, (2) failure to authorize and/or permit rest breaks, (3) failure to furnish accurate wage statements, (4) penalties under Labor Code § 210, and (5) unfair business practices. (Id. ¶¶ 27-53.) Plaintiffs filed a First Amended Complaint ("FAC") on September 9, 2020. (Dkt. No. 1, Ex. A.) In the FAC, Plaintiffs added a claim for violations under the Private Attorney General Act. (Id. ¶¶ 54-58.) On February 19, 2021, Defendant removed the case to this Court pursuant to the Class Action Fairness Act ("CAFA"). (Dkt. No. 1 ("Removal")). On February 25, 2021, the Court issued an Order to Show Cause why this case should not be remanded for failure to meet the CAFA amount in controversy requirement. (Dkt. No. 9.) On March 5, 2021, Defendant filed a response to the Court's Order (Dkt. No. 10.) On March 8, 2021, Plaintiffs filed their Motion to Remand.

### II.  Legal Standard

Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by Congress and the Constitution. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). A removed action must be remanded to state court if the federal court lacks subject matter jurisdiction. Id. § 1447(c). "The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01538 PA (JCx) | Date | March 24, 2021 |
|---|---|---|---|
| Title | Rudi Vanegas v. DHL Express (USA), Inc. | | |

construed against removal jurisdiction." Prize Frize, Inc. v. Matrix (U.S.) Inc., 167 F.3d 1261, 1265 (9th Cir. 1999). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

Federal subject matter jurisdiction may be based on diversity of citizenship pursuant to CAFA. See 28 U.S.C. § 1332(d)(2). The party seeking federal subject matter jurisdiction under CAFA must show that at least one plaintiff and one defendant are citizens of different states, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs. Id. "[T]he burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 685 (9th Cir. 2006) (per curiam). "The notice of removal 'need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,' and need not contain evidentiary submissions." Fritsch v. Swift Transp. Co. of Ariz., LLC, 899 F.3d 785, 788 (9th Cir. 2018) (quoting Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 82 (2014)). However, "[i]f the amount in controversy is not clear from the face of the complaint, 'the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." Id. at 788-89 (quoting Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015)). "Along with the complaint, [courts] consider allegations in the removal petition, as well as 'summary-judgment-type-evidence related to the amount in controversy at the time of removal.'" Id. at 793 (quoting Kroske v. U.S. Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005)). "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." Ibarra, 775 F.3d at 1197. "[A] damages assessment may require a chain of reasoning that includes assumptions," but "those assumptions cannot be pulled from thin air" and "need some reasonable ground underlying them." Id. at 1199.

A plaintiff may contest a removal in either a facial or factual attack. Salter v. Quality Carriers, 974 F.3d 959, 964 (9th Cir. 2020). "A 'facial' attack accepts the truth of the [jurisdictional] allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" Id. (quoting Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014). "A factual attack, by contrast, 'contests the truth of the [jurisdictional] allegations, usually by introducing evidence outside of the pleadings.'" Id. (quoting Leite, 749 F.3d at 1121). But outside evidence is not necessary; a factual attack can also rest on a plaintiff's "reasoned argument" challenging "the truth of the defendant's jurisdictional allegations" and explaining why those assumptions are not "supported by evidence." Harris v. KM Indus., Inc., 980 F.3d 694, 699 (9th Cir. 2020)

### III. Analysis

Defendant argues that the allegations in Plaintiffs' Complaint put into controversy an amount in excess of $5 million as required to support this Court's jurisdiction under CAFA. According to Defendant, Defendant may reasonably assume a 50% violation rate "based on Plaintiff Rudi Vanegas's discovery responses and the allegations in Plaintiff's [FAC]." (Dkt. No. 10, Response to Court's Order

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01538 PA (JCx) | Date | March 24, 2021 |
|---|---|---|---|
| Title | Rudi Vanegas v. DHL Express (USA), Inc. | | |

to Show Cause at 1.) Defendant argues that in his special interrogatory responses, Plaintiff Vanegas "stated that he was not provided with meal periods or rest breaks on the 'overwhelming' majority of his shift - i.e. more than 50% of the time." (Id. at 4 citing Special Interrogatory Nos. 1, 3.) Defendant claims Plaintiffs' FAC "further asserts that [Plaintiffs'] claims are typical of those of other putative class members," meaning the other class member claims similarly allege they did not receive a meal or rest break for the "overwhelming majority" of their shifts. Defendant also points to allegations in the FAC that the "alleged violations were 'uniform and systematic' and part of a 'policy and practice'" to suggest that a 50% violation rate is reasonable. (Id. citing FAC ¶ 24.) According to Defendant, "[r]elying upon . . . Plaintiff Vanegas's sworn discovery responses, [and] Plaintiffs' FAC, [Defendant] may reasonably assume that [class members] did not receive a compliant meal period on exactly half of meal break eligible shifts," and did "not receive a compliant rest break on exactly half of rest break eligible shifts." (Id. at 10-11.)

Apart from Plaintiffs' allegations in the FAC and Plaintiff Vanegas's interrogatory responses, Defendant provides (1) the number of shifts employees worked in which they were eligible to receive a meal period (i.e., shifts over five hours . . .); (2) the number of shifts employees worked in which they were eligible to receive a rest break (i.e. shifts over 3.5 hours . . .); (3) the average hourly rate earned by employees; and (4) the total number of employees during the relevant time period." (Id. at 1-2.) Based on this information, Defendant estimates "non-exempt employees working for Defendant in California worked approximately 643,253 shifts that were long enough to warrant a rest break . . . and 589,909 shifts that were long enough to warrant a meal break" during the class period. (Id.) In addition, the "lowest hourly rate of pay for all non-exempt employees in California for this time period was approximately $25.24." (Id.) Defendant argues that "applying an evidentiary-supported assumed 50% violation rate, the amount in controversy by Plaintiffs' on" the claims for meal and rest break violations comes to $15,512,024.44. (Id. at 11.) Defendant also calculated that, assuming a 20% violation rate on the meal and rest break claims, the amount in controversy is $6,204,809.77. (Id.)

Plaintiffs make a factual attack to Defendant's assumed violation rates. Plaintiffs argue Defendant's assumed violation rates of 50% and 20% are unjustified and not supported by the evidence in the record. Plaintiffs argue Defendant's assumed violation rates rely "on nothing more than a couple of discovery responses by Plaintiff Vanegas attesting to his personal work experience to establish the jurisdictional amount." (Mot. at 1.) According to Plaintiffs, "[c]ontrary to Defendant's assertion, Plaintiff Vanegas's allegation that his claims are 'typical' of the other . . . putative class members does not mean that his personal experience can be imputed to all of them, regardless of differences in their positions, duties and work locations." (Id.) Plaintiffs state Defendant "cannot impute Plaintiff Vanegas's personal experience to the other . . .putative class members to reach the jurisdictional threshold under CAFA." (Id. at 11.)

The Court agrees with Plaintiffs, and finds that Defendant has failed to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million. In particular, Defendant has failed to show that its assumed violation rates of 50% and 20% are anything more than assumptions

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01538 PA (JCx) | Date | March 24, 2021 |
|---|---|---|---|
| Title | Rudi Vanegas v. DHL Express (USA), Inc. | | |

pulled from thin air. A 50% violation rate, and even a 20% violation rate, are not supported by the plain language of the Complaint or Plaintiff Vanegas's interrogatory response, and Defendant has not offered any evidence to show that these assumptions are reasonable.

First, that Plaintiffs allege their claims are "typical" of the class "is of no help." Cifuentes v. Red Robin Intern., Inc., 11-cv-5635, 2012 WL allege their 693930, at *5 (N.D. Cal. Mar. 1, 2012). "The fact that Plaintiffs alleged their claims are 'typical' so as to satisfy the requirements for class certification does not mean" that the number of meal and rest break violations are alleged to be identical for all class members as they are to Plaintiffs. Id. "Typical in the class certification context simply means that representative claims are 'reasonably coextensive with those of absent class members; they need not be substantially identical." Id. (citing Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1184). Thus, Plaintiff Vanegas's statement in his interrogatories that he did not receive rest and meal breaks for the overwhelming majority of his shifts does not mean that every single one of the proposed class members similarly did not receive rest and meal breaks for the majority, or even for 20%, of their shifts.

Second, Defendant does not explain why it is reasonable to assume that every single employee who is a potential class member was deprived of a meal and rest period every other day for the entirety of the class period. See Lacasse v. USANA Health Sciences, Inc., 20-cv-01186, 2021 WL 107143, at *3 (E.D. Cal. Jan. 12, 2021) ("USANA does not explain why it is reasonable to assume that . . . every associate qualified for and was consistently deprived of meal and rest breaks every week, fifty weeks per year for four years."). Allegations in the Complaint that the Defendant had a "policy and practice" of denying meal and rest breaks is insufficient to support Plaintiffs' assumed violation rates. For example, in Akana v. Estee Lauder, Inc., the Court found Defendants' estimated violation rate of one noncompliant meal break and one noncompliant rest break per week per employee was not supported by the evidence. 19-cv-00806, 2019 WL 2225231, at *6 (C.D. Cal. May 23, 2019). Defendants argued that the language in the Complaint supported "an assumed high violation rate because it [was] alleged that 'Defendants had a policy or practice of not providing' meal and rest periods." Id. at 7. The Court however, found that, as in Ibarra, Defendants "relied on an assumption rate of its alleged labor law violations that was not grounded in real evidence," despite having the burden of proof as to the amount in controversy. Id. (citing Ibarra 775 F.3d at 1198). In Akana, the Court noted that the allegations in Ibarra also concerned those as to a "pattern and practice." Nevertheless, the Ninth Circuit in Ibarra held that to support a claim as to the amount in controversy, the defendant must present evidence, not bare assumptions, as to the violation rate, and relying on this type of language in the complaint was not sufficient. Id.; see also Toribio v. ITT Aerospace Controls LLC, 19-cv-5430, 2019 WL 4254935, at *2 (C.D. Cal. Sept. 5, 2019) ("As is true in many such [wage-and-hour cases], Aerospace has attempted to read the vague tea leaves strewn about by Plaintiff in the Complaint, which in this instance is based upon Plaintiff's allegations of a 'pattern and practice' of various violations. From those meager offerings, Aerospace has attempted to supply violation rates . . . of one meal break violation and one rest break violation per week. . . . What Aerospace cannot do is simply pull violation rates out of thin air, . . . and conclusively state that they are 'reasonable inference[s]' about the most important variables involved in the necessary calculations."); Koreisz v. On Q Fin'l Inc., 18-cv-08662, 2018 WL 6567694, at *3 (C.D.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-01538 PA (JCx) | Date | March 24, 2021 |
|---|---|---|---|
| Title | Rudi Vanegas v. DHL Express (USA), Inc. | | |

Cal. Dec. 12, 2018) ("Perhaps as a tacit acknowledgment that using 100% would not be reasonable [given a 'pattern and practice' allegation,] On Q Financial assumes a 50% violation rate. But neither of Ms. Spertina's declarations nor On Q Financial's Opposition offers any reason 'grounded in real evidence' as to why a 50% violation rate is appropriate.").

The alternative calculation of 20% provided by Defendant again does "not take the place of evidence." Lacasse, 2021 WL 107142, at *3. This alternative calculation merely "demonstrate[s] how arbitrary [Defendant's] assumptions are: [it] show[s] how simple it is to manipulate the assumptions to produce totals larger or smaller than the $5 million threshold." (Id.) Defendant has not provided any evidence to suggest that a violation rate of once per week as opposed to once per month, or once every few months, per class member, is reasonable.[1]

### B. Attorney Fees

In their FAC, Plaintiffs seek an award of attorney fees. (Dkt. No. 1-1, Ex. A, Prayer for Relief ¶ 8.) Defendant argues that "[i]n the class action context, courts have found that 25% of the aggregate amount in controversy is a benchmark for attorneys' fee awards under the 'percentage of fund' calculation." (Response to Court's Order to Show Cause at 14.) Defendant argues that "even under the conservative benchmark of 25% of the total recovery, attorneys' fees on the amount in controversy established . . . could be as high as $7,641,681.11." (Id.) To support their argument, Defendant cites to several cases for support of a 25% or higher attorney fee, but make no attempt to analogize the facts or circumstances of those cases to this one. Without more, these cases do not support Defendant's allegations as to the appropriate amount of attorneys' fees that may be at issue in this case. See, e.g., Serran v. Pac. Coast Feather Cushion Co., No. CV 17-4414-DMG (JEMx), 2017 WL 3720630, at *3 (C.D. Cal. Aug. 28, 2017) ("Defendants attempt to satisfy their burden by citing cases that supposedly had 'allegations similar to this one' . . . [but] Defendants do not compare the allegations and circumstances of those cases with those of the instant matter. Thus, Defendants' citation to these cases does not satisfy their burden of showing the amount in controversy through evidence and argument.") (citation omitted).

Moreover, Defendant has failed to meet its evidentiary burden regarding attorneys' fees for purposes of removal because, as noted above, Defendant's calculations of the class recovery are not adequately supported. See, e.g., Garibay v. Archstone Communities LLC, 539 F. App'x 763, 764 (9th

---

[1] In Defendant's Response to the Court's Order to Show Cause, Defendant also calculated the potential damages for Plaintiffs' penalties claims under Labor Code Sections 204 and 206. To calculate the amount of damages for these claims, Defendant used the same unfounded 50% and 20% violation rates. Thus, for the same reasons as those stated above, the Court finds Defendant's calculations for these claims are similarly insufficient, and do not meet Defendant's burden of showing by a preponderance of the evidence that the amount in controversy is met.

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
## CIVIL MINUTES - GENERAL

| Case No. | CV 21-01538 PA (JCx) | Date | March 24, 2021 |
|---|---|---|---|
| Title | Rudi Vanegas v. DHL Express (USA), Inc. | | |

Cir. 2013) (defendant's reliance on 25% benchmark failed because it had "not established by a preponderance of the evidence that the underlying amount upon which those fees would be based [was] at least $4 million, as would be required to meet the $5 million minimum"); Armstrong v. Ruan Transport Co., 16-cv-1143, 2016 WL 6267931, at *7 (C.D. Cal. Oct. 25, 2016) ("Defendant's fee estimate is based on a conjectural damages calculation and should be disregarded."); Campbell v. Vitran Express, Inc., 10-CV-04442, 2010 WL 3971944, at *4 (C.D. Cal. Aug. 16, 2010) ("[B]ecause such uncertainty surrounds Defendant's calculation of damages and penalties, the Court cannot find that the inclusion of a 25% attorneys' fee, which Defendant recommends, would necessarily place the amount in controversy over the $5,000,000 CAFA threshold.").

## Conclusion

For the reasons stated above, Defendant has failed to satisfy its burden of showing, by a preponderance of the evidence, that the amount in controversy exceeds $5,000,000 as required for federal jurisdiction under CAFA. The Court therefore grants Plaintiffs' Motion to Remand. This action is hereby remanded to the Superior Court of California, County of Los Angeles, case number 20STCV16014, for lack of subject matter jurisdiction. See 28 U.S.C. § 1447(c).

IT IS SO ORDERED.